UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNELLA RICHMOND MOSES,
Personal Representative of the Estate of
MARIE MOSES IRONS, deceased,

        Plaintiff,                        CIVIL ACTION NO. 04 CV 74889 DT

       v.                               DISTRICT JUDGE ANNA DIGGS TAYLOR

PROVIDENCE HOSPITAL AND        MAGISTRATE JUDGE VIRGINIA MORGAN
MEDICAL CENTERS, INC., a
domestic non-profit corporation,

        Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTION TO COMPEL PEER REVIEW DOCUMENTS

This matter is before the court on plaintiff's motion to compel discovery in this civil action. Oral argument was held before the magistrate judge on April 18, 2007. An order was issued with respect to other outstanding issues, but the issue of discovery of Peer Review documents was taken under advisement. For the reasons stated in this memorandum opinion, IT IS ORDERED that such portion of the motion is DENIED.

Plaintiff, personal representative of the Estate of Marie Moses-Irons (the decedent), alleges against the hospital a violation of the Emergency Medical Treatment and Active Labor Act, (EMTALA) 42 U.S.C. §1395(d)(d). The court's jurisdiction is based on 28 U.S.C. § 1331,

federal question jurisdiction.¹ Plaintiff also alleges state medical malpractice claims against the hospital and the treating physician, which are before the court pursuant to its supplemental jurisdiction, 28 U.S.C. § 1367.

*FACTUAL BACKGROUND:*

The case arose from the following alleged facts. On December 13, 2002, the decedent took her husband Christopher Howard to the emergency room of Providence Hospital on an emergency basis. He had signs and symptoms of acute mental illness, including high blood pressure, disorientation, nausea, vomiting, and severe emotional and psychiatric changes. (Amended Complaint 7) He was seen in the ER, received treatment for his physical complaints, and was admitted for his psychiatric problems. He was hospitalized from December 13, 2002, to December 19, 2002, and received psychiatric evaluation, medication, and treatment while there. Ten days after his discharge, Mr. Howard murdered the decedent, his wife. Plaintiff alleges that the decedent's death was caused by the hospital's EMTALA violation, and the negligence of both the hospital and the physician. The Estate seeks money damages.

*LEGAL BACKGROUND:*

The EMTALA statute was passed by Congress to address the problem of "patient dumping," a practice whereby hospitals either send a patient in need of medical care to another facility (most often a public hospital) or simply turn the patient away due to the patient's inability to pay. See, McKitrick, Note: The Effect of State Medical Malpractice Caps on

---

¹An EMTALA claim is only cognizable against the hospital, not against the treating physician. See, Delaney v. Cade, 986 F.2d 387, 393-94 (10th Cir. 1993); Brenord v. Catholic Medical Center of Brooklyn and Queens, Inc., 133 F. Supp.2d 179, 185-186 (E.D. NY 2001)(collecting cases); Deron v. Wilkins, 879 F. Supp. 603, (S.D. Miss. 1995).

Damages Awarded under the Emergency Medical Treatment and Active Labor Act (42 U.S.C. §1395DD), 42 CLVSLR 171 (1994). Although all of the legislative history is directed towards concerns about indigent and uninsured patients, the statute's language is broader. The statute provides by its terms that "if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capacity of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." The term "appropriate medical screening" is not defined. Most courts that have looked at this issue have determined that the measure is not the outcome of the examination, but whether or not the examination performed was considered standard procedure by the hospital. In such respect, the standard would be a subjective one. Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 272 (6th Cir. 1990).

The EMTALA statute also provides that there be "such further medical examination and such treatment as may be required to stabilize the [emergency] medical condition [prior to transfer]." 42 U.S.C. § 1395dd(b)(1)(A). Transfer also includes a discharge. See, 42 U.S.C. § 1395dd(e)(4). The term "to stabilize" is defined by EMTALA as meaning, "with respect to an emergency medical condition, . . .[a hospital must] provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur during the transfer of the individual from a facility. 42 U.S.C. § 1395dd(e)(3)(A); Harry v. Marchant, 291 F.3d 767, 770-771 (11th Cir. 2002). The majority of courts hold that it is not necessary in the screening context for plaintiff to

show an improper motive–i.e., an intent not to treat uninsured patients, and the Supreme Court has held with respect to the stabilization requirement, that no improper motive need be shown. Roberts v. Galen of Virginia, Inc., 525 U.S. 249, 119 S.Ct. 685 (1999).

EMTALA imposes a "limited duty on hospitals with emergency rooms to provide emergency care to all individuals who come there." Vickers v. Nash General Hospital, Inc., 78 F.3d 139 (4th Cir. 1996). Virtually every decision addressing EMTALA has recognized that Congress did not intend for the Act to be a substitute for a state medical malpractice action. Id. at 710.

*Peer Review Materials*

In the instant motion, plaintiff seeks materials related to the hospital's Peer Review procedures–the Performance Improvement Committee documents. (#100, page 3) Defendant alleges that such information is protected by Michigan's Public Health Code and Peer Review privilege. It is barred from discovery by state statute.

Discovery in federal courts is generally governed by the Federal Rules of Civil Procedure regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship. Atteberry v. Longmont United Hosp., 221 F.R.D. 644 (D. Colo., 2004); Everitt v. Brezzel, 750 F. Supp. 1063, 1065 (D. Colo. 1990). "Where federal law provides the governing substantive law in a lawsuit, the federal common law of privileges will govern." Everitt, 750 F.Supp. at 1066. Federal law provides the rule of decision in the EMTALA claim but not the malpractice claims. Federal Rule 26 provides that a party may obtain discovery regarding any matter not privileged which is relevant to the subject matter involved in the pending action . The

information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Thus, there are two prongs to the test as to whether the documents should be produced: (1) is the information relevant to the subject matter and (2) is it otherwise privileged?

Plaintiff's position is that it does not need and is not requesting the documents for the supplemental malpractice claim.[2] Plaintiff states it is seeking the documents only for the EMTALA claim, to which the state statute is inapplicable. Defendant argues that the documents are not relevant to the EMTALA claim. The court is not persuaded that the documents would be relevant to the subject matter of the EMTALA claim. They are not likely to lead to admissible evidence in the EMTALA claim because EMTALA is not intended to be a federal malpractice action. Harry v. Marchant, 291 F.3d 767 (11th Cir. 2002). Under EMTALA, patients diagnosed with an "emergency medical condition" or "active labor" must either be treated or be transferred in accordance with EMTALA. Burditt v. U.S. Dept. of HHS, 934 F.2d 1362, 1367 (5th Cir. 1991). The sole issue in this EMTALA claim is whether Mr. Howard was diagnosed with an emergency condition, a fact which can be established from the medical records, and if so, whether the hospital transferred (i.e. discharged) him when he was not stable. A hospital's duty under EMTALA does not arise until and unless the hospital detects an emergency medical condition. Jackson v. East Bay Hospital, 246 F.3d 1248, 1254 (9th Cir. 2001).

---

[2]But for the claim of an EMTALA violation, that is, in an ordinary medical malpractice action in state court, no discovery of this group of documents could be had.

EMTALA does not guarantee that the hospital's emergency personnel will correctly diagnose a patient's condition as a result of the emergency room screening. Id., citing Baber v. Hosp. Corp. of America, 977 F.2d 872, 879 (4th Cir. 1992). The threshold test is whether the hospital had actual knowledge of an emergency condition. Id. at 1256-1257. This determination can be made by looking at the medical record and taking depositions of the persons on the scene. The hospital's failure to diagnose a mental illness likely to result in danger to others or to ascertain that plaintiff's condition might deteriorate cannot serve as the basis for a violation of EMTALA's stabilization requirements.[3] Id., discussing Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1259 (9th Cir. 1995). The Peer Review materials which may include a post-mortem conference designed to address whether staff should have known of some underlying condition or should have diagnosed something different may be relevant to a malpractice claim, but not to the EMTALA claim. Thus, liability under EMTALA attaches, *inter alia*, only if the hospital is shown to have known of the existence of a necessary fact, e.g., that the patient suffered from an emergency medical condition which was unstablized. See, St. Anthony Hospital v. U. S. Dept. Of HHS, 309 F.3d 680, 705 (10th Cir. 2002), citing Urban By and Through Urban v. King, 43 F.3d 523, 525-26 (10th Cir. 1994).

With respect to stabilization, interpreting EMTALA to require stabilization treatment after diagnosis of an emergency condition and outside the context of a transfer [or discharge] raises questions not answered by Congress, such as: when the duty to provide stabilization treatment terminates; if treatment is prolonged and transfer is not imminent, how long treatment

---

[3]These are the claims alleged by plaintiff in Count III of the Amended Complaint for negligence against the hospital. See, ¶ 56.

must be provided; and when the temporal delay between a determination of an emergency medical condition and the initiation of treatment constitutes a violation of a duty to provide stabilization treatment. Harry v. Marchant, 291 F.3d at 772, note 1. Such a broad reading makes the EMTALA statute one for federal malpractice, a position totally rejected by the case law.[4] Transfer is defined by the statute to be "the movement (including the discharge) of an individual outside of a hospital's facilities. 42 U.S.C. § 1395dd(e)(4). Here, it appears that Mr. Howard was admitted and remained hospitalized for six or seven days. He received treatment and then was discharged.

Thus, the request is denied. The documents need not be disclosed but a log shall be provided listing the documents withheld.

SO ORDERED.

> S/VIRGINIA M. MORGAN
> VIRGINIA M. MORGAN
> UNITED STATES MAGISTRATE JUDGE

Dated: June 22, 2007

Proof of Service

I certify that this document was served upon counsel of record via the Court's ECF system and/or U. S. Mail on 6/22/07.

> s/Barbara M. Radke
> Secretary to Magistrate Judge Virginia M. Morgan

---

[4] Courts not looking at relevance to the subject matter of the claim have occasionally granted discovery of the peer review materials. Federal courts are traditionally reluctant to recognize new privileges because they contravene the fundamental principle that the public has a right to every man's evidence. If the documents were relevant to the subject matter of EMTALA and federal common law were to apply to the EMTALA claim, courts would generally look to state law. If so, they would observe that the Michigan legislature had barred disclosure of the peer review documents in discovery and should use that as a guide. However, some courts have held that there is no basis for recognizing a medical peer review privilege or medical risk management privilege. Sonnino v. University of Kansas Hospital Authority, 220 F.R.D. 633, 644 (D. Kan. 2004) and so have ordered discovery.